UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| ALTOVISE WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5: 13-131-JMH |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon the motion of the United States to dismiss the complaint, or in the alternative for summary judgment. [R. 15] Plaintiff Altovise Wilson has filed a response [R. 21] to which the government has replied. [R. 22] This matter is therefore ripe for determination.

**I**

Wilson is a former federal prisoner, and was confined at the Federal Medical Center in Lexington, Kentucky, at all times relevant to his complaint. Wilson indicates that he is paraplegic and confined to a wheelchair. [R. 5, p. 2]

On September 2, 2012, Wilson was preparing to take a shower. In doing so, he was apparently aware of "numerous complaints about the water temperature [being] so hot, you don't have to boil it to make coffee." Nonetheless, he "rolled into the shower and set the water to warm [but] was burned by the

1

excessively hot water." [R. 5, p. 2] In his response, Wilson further explained that as part of his routine, he would first turn on the shower and spray down the shower bench and clean it with a rag. [R. 21-1, p. 4] He would then transfer from his wheelchair to the shower bench. Wilson turned the shower knob halfway between cold and hot to get warm water. Wilson indicates that the shower head, which is handheld, was facing downward towards his lower body, and first wet his genital area. However, Wilson indicates that because he is paraplegic and "doesn't have any feeling from his waist down," [R. 21-1, p. 4], he did not immediately feel the burns, but instead only noticed the injury to the skin in his groin area later that evening when he felt some moisture in his bed. [R. 5, p. 2]

The next day, Wilson went to the prison's medical center and was examined by Nurse Hardin, who determined that he had second degree burns in his inner thigh, penis, and groin area. [R. 15-3, pp. 2, 10-11] His skin was treated with wound cleaner and a skin wound barrier was applied. On September 4, 2012, Wilson was given Tylenol with oxycodone for pain management and a ten-day course of antibiotics was prescribed. [R. 5-3, p. 3; R. 15-3, pp. 14-15] Wilson's wound dressings were changed by a wound care specialist on September 7, 2012. [R. 5-3, pp. 7-9] A follow up examination ten days later established that Wilson's wounds showed "marked improvement," and the prescription for

narcotic pain relievers was discontinued as no longer necessary. [R. 15-3, pp. 27-28] At a chronic care visit on October 1, 2012, Wilson indicated that he had no continuing complaints regarding his burn injury. [R. 15-3, pp. 29-32]

Four days after the incident, on September 6, 2012, Wilson completed and filed a Form 95 Claim for Damage, Injury, or Death, the form used to attempt voluntary settlement of a claim prior to filing suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 ("FTCA"). In that form, Wilson explained that he had been burned by excessively hot water in the showers and sought $100,000.00 in compensation. [R. 5-2, p. 1] The Bureau of Prisons denied his claim, stating that showers in the prison "meets the temperature standard of 105 degrees Fahrenheit," and finding no indication of negligence by prison staff. [R. 5-1, pp. 2-3] Wilson filed suit in this Court under the FTCA on July 15, 2013.

The United States indicates that FMC-Lexington uses a water heating system that blends hot and cold water to provide evenly warmed water throughout the prison at plus or minus three degrees from its setting, and uses a diaphragm and stem system to avoid temperature spikes or scalding. While the water heater can provide water at temperatures between 105 and 180 degrees Fahrenheit ("° F"), it is set at standards established by the American Correctional Association which limit the upper range to

3

120° F.  [R. 15-4 (*Hicks Decl.*), pp. 2-4, 5]  The government indicates that FMC-Lexington had received no complaints regarding excessively hot water before Wilson's injury on September 2, 2012, or at any time thereafter; that monthly maintenance checks of the water heater during 2012 did not indicate any malfunctions; and that no service issues regarding the plumbing or the faucets indicated any problem with water heating during that period.  *Id*. at pp. 5-7.

A "normal" shower temperature is 110° F.  At 116° F, hot water passes the "pain threshold," but at that temperature it will take 35 minutes of exposure to cause a first degree burn and 45 minutes of exposure to cause a second or third degree burn.  At 122° F, above the ACA maximum, a first degree burn can occur in as little as 1 minute, but second or third degree burns will require 5 minutes of exposure.  *Hicks Decl.* at pp. 4, 34.

In its dispositive motion, the United States contends that (1) Wilson cannot establish negligence because FMC-Lexington set the facility's water heater in conformity with nationally-established ACA guidelines and conducted regular maintenance inspections of the equipment to ensure that it maintained water temperatures within those parameters; (2) Wilson's injuries were *de minimis* because they were minor and resolved quickly; and (3) Wilson's decision to proceed in the face of an "open and obvious" danger by entering a shower he knew could be hot enough

4

"to make coffee" relieves it from liability. [R. 15-1, p. 2] The Court will address each of these arguments.

**II**

The Court must treat the government's motion to dismiss the complaint as a motion for summary judgment under Rule 56 because it has attached and relied upon documents and declarations extrinsic to the pleadings in support of it. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). A motion under Rule 56 challenges the viability of the other party's claim by asserting that at least one essential element of that claim is not supported by legally-sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). If the moving party demonstrates that there is no genuine dispute as to any material fact and that she is entitled to a judgment as a matter of law, she is entitled to summary judgment. *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992).

The moving party does not need her own evidence to support this assertion, but need only point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which

demonstrates that a factual question remain for trial. *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003); *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993) ("A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts.").

The court reviews all of the evidence presented by the parties in a light most favorable to the responding party, with the benefit of any reasonable factual inferences which can be drawn in his favor. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). If the applicable substantive law requires the responding party to meet a higher burden of proof, his evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993).

Under the FTCA, a plaintiff may recover damages from the United States for injury, property loss, or death "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope ... of employment." 28

U.S.C. § 1346(b). The United States may be held liable only if the conduct complained of amounts to negligence "in accordance with the law of the place where the act or omission occurred." *Id*. Therefore Kentucky law establishes the standard for liability. *Rayonier Inc. v. United States*, 352 U.S. 315 (1957). In Kentucky, to recover for alleged negligence a plaintiff must prove that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; (3) the plaintiff suffered actual injury; and (4) the injury was proximately caused by the defendant's breach. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1997); *Waiters v. TSR, Inc.*, 904 F.2d 378, 380-81 (6th Cir. 1990).

The Court first addresses the government's assertion that the second degree burns Wilson suffered constituted only *de minimis* injury, thereby precluding recovery. A separate federal statute prohibits recovery under the FTCA for purely mental or emotional injury unless the inmate establishes physical injury:

> No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

28 U.S.C. § 1346(b)(2); *see also Glover-Bryant v. Uptagraft*, No. 09-CV-134-JMH, 2009 WL 2877149 (E.D. Ky. Sept. 2, 2009). The physical injury suffered must be more than *de minimis*, but it

need not be significant. *Jarriet v. Wilson*, 162 F. App'x 394, 401 (6th Cir. 2005). In this case, while Wilson's burns resolved in less than a month with no permanent damage, his burns caused open wounds; he was prescribed narcotic pain medication for over ten days after he was scalded; and he received daily wound care and bandage changes for several weeks. Under these facts, the Court assumes without deciding that Wilson's injuries were more than *de minimis*.

The Court does conclude, however, that Wilson's allegations fail to present a triable issue regarding whether the government failed to satisfy its duty of care.

First, the government has placed uncontroverted evidence into the record which establishes that it installed a water heating system, faucets, and shower heads that provide multiple and redundant safeguards against overheating or scalding. "FMC Lexington has exercised reasonable and ordinary care in the maintenance and inspection of the water heater for the Plaintiff's unit, WH-8, and the installation of anti-scald faucets in the unit shower." In addition, that system was subjected to routine maintenance and inspections to ensure that it was operating properly and within nationally-defined and accepted safety standards. "Before the alleged incident, on August 8, 2012, and after the alleged incident on September 10, 2012, WH-8 was inspected as part of a monthly scheduled

preventative maintenance. The water heater's water temperature was regularly checked and was found to be within ACA standard settings, 100 to 120 degF." [R. 15-1, pp. 16-17] Apart from the fact that he was scalded while showering on this one occasion, Wilson has not presented any evidence to refute the government's evidence that it took reasonable steps to prevent scalding.

Kentucky law generally imposes a standard of reasonable care with respect to activities within the Commonwealth. *Cf. M & T Chemicals, Inc. v. Westrick*, 525 S.W.2d 740, 741 (Ky. 1974) ("Every person owes a duty to every other person to exercise ordinary care in his activities to prevent any foreseeable injury from occurring to such other person.") But this duty does not require persons to act as guarantors for the safety of others. Thus, an operator of a business premises owes a duty of ordinary care, "but he is not an insurer of a guest's safety." *Jones v. Abner*, 335 S.W.3d 471, 477 (Ky. App. 2011) (citations omitted). In the context of the operation of a jail, "[t]he law imposes the duty on a jailer to exercise reasonable and ordinary care and diligence to prevent unlawful injury to a prisoner placed in his custody, but he cannot be charged with negligence in failing to prevent what he could not reasonably anticipate." *Rowan County v. Sloas*, 201 S.W.3d 469, 479 (Ky. 2006).

The United States has established as a matter of law that it took reasonable steps to insure that inmates using the showers at FMC-Lexington would not be scalded by excessively hot water, and therefore acted with due care. See *Cook v. United States*, No. 2: 11-CV-4, 2011 WL 7139158, at *6-7 (N.D. W. Va. 2011) (dismissing FTCA claim for failure to establish breach of duty of care where water heater was set within ACA standards and was routinely inspected and maintained); *Smith v. United States*, 19 F.3d 22, 1994 WL 55559, at *1-2 (7th. Cir. 1994) (same). In light of Kentucky law that requires only reasonable care, this conclusion is not undermined by the fact that Wilson, a paraplegic with no sensation below the waist, was scalded on this one occasion. *Jones*, 335 S.W.3d at 477. Wilson's arguments to the contrary are unavailing, as "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial.").

Finally, the Court notes that there are other weaknesses in Plaintiff's case, although the Court need not reach a conclusion with respect to them to dispose of this matter. Notably, Wilson alleges that he chose to use the shower in the face of an open and obvious risk of harm to himself. Wilson alleges that it was general knowledge that the water in the shower could get hot enough "to make coffee." [R. 15-1, p. 2] Nonetheless, he entered into the shower area, set the shower dial to warm, and remained there until he completed his shower. While Kentucky has adopted the doctrine of comparative negligence in lieu of contributory negligence, see *Hilen v. Hays,* 673 S.W.2d 713 (Ky. 1984), a trier of fact would no doubt look askance at the damages attributable to Defendant in light of Plaintiff's claimed prior knowledge that the water in the shower area could get exceedingly hot and his decision to proceed in the face of that risk even though he was, he acknowledged, at heightened risk for scalding because of the lack of sensation in a portion of his body. [R. 21-1, p. 5 ("Scald injuries are especially likely to in certain populations, particularly children less than five years of age, adults more than 65 years of age, and persons with handicaps such as sensory neuropathies.")]

Accordingly, **IT IS ORDERED** that:

1. The United States's "Motion to Dismiss, or in the Alternative for Summary Judgment" [R. 15] is **GRANTED.**

2. Plaintiff Altovise Wilson's "Motion to Disregard Defendants Motion to Dismiss, or in the Alternative for Summary Judgment" [R. 21] is **DENIED**.

3. Wilson's original and amended complaints [R. 1, 5] are **DISMISSED WITH PREJUDICE**.

4. The Court will enter a judgment contemporaneously with this Order.

5. This matter is **STRICKEN** from the active docket of the Court.

This the 6th day of August, 2014.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge